UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SPIRAL DIRECT, INC. and SPIRAL
DIRECT, LTD.,

    Plaintiffs,

v.                                                    Case No:   6:15-cv-641-Orl-28TBS

BASIC SPORTS APPAREL, INC.,

    Defendant.

## ORDER

This case comes before the Court without oral argument on the following motion papers:

- Respondent and Non-Party, Simon Property Group, Inc.'s Motion to Quash Subpoenas, Alternatively, Motion to Limit Discovery and Enlarge Time to serve Objections to Modified Subpoenas and Incorporated Memorandum of Law in Support (Doc. 42);

- Plaintiff's Opposition to Non-Party Simon Property Group's Motion to Quash Subpoenas (Doc. 47);

- Respondent and Non-Party's, Simon Property Group, Inc., Reply to Plaintiff's Opposition to Motion to Quash Subpoenas (Doc. 55); and

- Plaintiff's Sur-Reply in Support of its Opposition to the Motion to Quash (Doc. 57).

This dispute results from the issuance by counsel for Plaintiffs of six substantially identical subpoenas to non-party Simon Property Group, Inc. (Doc. 42 at 17-53). The subpoenas sought the production of documents and information concerning six shopping malls located in Texas, Colorado and Illinois[1] (Id., at 55). The malls have approximately

---

[1] The shopping malls are: The Galleria in Houston, Texas; Cielo Vista in El Paso, Texas; Woodfield Mall in Schaumburg, Illinois; Grapevine Mills in Grapevine, Texas; Sunland Park Mall in El Paso, Texas;

1,400 current, permanent retail tenants, hundreds of short term tenants, thousands of prior tenants, and two high-rise hotels and three office towers which also contain tenants (Id., ¶ 55-56). Information responsive to the subpoenas is located in Indiana, Texas, Colorado and Illinois (Id., at 55). Compliance with the subpoenas would require Simon to review leases for each of the malls (Id., at 17-53). Depending on the date and type of lease, Simon would have to review its leases in hard copy form or by searching databases (Id., at 56-57).

The leases contain what Simon deems confidential and proprietary information concerning rental rates, percentage rent, ancillary charges, and tenant improvement allowances (Id.). Some leases also contain personal information such as Social Security numbers for guarantors (Id.). To protect this information from disclosure, Simon must individually review each document and redact what it believes is confidential and proprietary information (Id.). Some leases require Simon to notify the tenant that the lease is being produced (Id., at 57). Each lease must be independently reviewed to determine whether it contains this requirement (Id.).

The information Simon maintains electronically for permanent tenants is kept on one system and the information for short-term tenants is stored on a different system (Id.). The electronic databases only contain lease documents and lease document related correspondence (Id.). They do not include email, lease negotiations, memos, financial information or other informal communication (Id.). For permanent tenants that were not active when Simon implemented its online lease file system, paper files are kept in offsite storage in Indianapolis (Id., at 58). Simon has in excess of 44,000 boxes of files that

---

and Colorado Mills in Lakewood, Colorado (Doc. 42 at 17-49).

would need to be retrieved and manually reviewed in order to comply with the subpoenas (Id.). Documents covered by the subpoenas would have to be copied and redacted (Id.). Simon tracks permanent tenant lease negotiations in a different system that was implemented in 1997 (Id.). The way in which the system is organized requires a multiple year search for each tenant (Id.).

Simon's leasing department, legal department, and onsite personnel may also have files containing responsive information (Id.). For short-term tenants, files are located at the mall offices or at offsite storage facilities maintained at the local level (Id.). Unsigned copies of short-term leases may exist in an electronic database that was implemented in 1999 (Id., at 59). Each year has its own archive that would have to be accessed and searched (Id.). Other documents Simon does not consider lease documents are maintained at various locations including the malls, regional offices in various states, and in Indianapolis (Id., at 58-59). Compliance with the subpoenas would require Simon to identify all potential custodians as well as 89 departments for a period in excess of 21 years (Id., at 60).

The production of email would require Simon to identify all pertinent accounts and custodians, then email files and backup tapes would have to be searched (Id., at 60). This would involve the search of multiple servers (Id.). Backup tapes and servers must be searched manually and would require the engagement of a third party vendor and outside counsel to make relevancy and privilege reviews (Id.). In some instances, a forensics expert would be needed to analyze and restore data (Id., at 61).

Simon estimates that hundreds if not thousands of hours of administrative time along with hundreds of thousands of dollars in vendor costs and expenses would have to be expended to comply with the subpoenas (Id., at 61).

Simon engaged attorney Brian Blair to respond to the subpoenas (Doc. 55-1). On May 26, 2016, Mr. Blair and his associate, P. Alexander Quimby phoned Plaintiffs' counsel Jill Riola to discuss the subpoenas (Doc. 55-1 at 3). Following that conversation, Simon filed its motion to quash. The parties have now engaged in settlement negotiations and the Court understands that some, but not all issues have been resolved (Doc. 47-6 at 2; Doc. 55 at 19-20; Doc. 57 at 9-10). In particular, the Court understands that Simon is still claiming $18,000 in attorney's fees, costs and other expenses from Plaintiffs (Id.).

Middle District of Florida Rule 3.01(g) requires that "[b]efore filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement (1) certifying that the moving counsel has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion."

The motion to quash includes Mr. Blair's certificate that he "conferred with Ms. Riola, Esq., as counsel for Plaintiffs, via telephone in a good faith effort to resolve the issues raised in the Motion. Counsel for the Plaintiffs did not agree to limit the Motion [sic] as requested." (Doc. 42 at 15). Plaintiffs contend that despite his certificate, Mr. Blair failed to comply with Rule 3.01(g) before filing the motion to quash (Doc. 47 at 16-19). Resolution of this issue requires the Court to determine what occurred during counsels' May 26, 2016 telephone conversation. In making this determination, the Court focuses on Mr. Blair, Mr. Quimby, and Ms. Riola's affidavits. The pertinent information from those affidavits is set out below.

According to Mr. Blair:

> 6. On the telephone call, my first priority was to ask Ms. Riola whether she would agree to extend the deadline for Simon to respond to the Subpoenas. Ms. Riola agreed.
>
> 7. On the same telephone call, I also asked Ms. Riola "what the Plaintiffs were really looking for since the Subpoenas were very broad. Ms. Riola responded by informing me that they were looking for the time periods when the individuals and entities listed in the Subpoenas may have been operating in the six malls identified in the Subpoenas. Based upon that information I then asked Ms. Riola if it would be possible to limit the scope of the Subpoenas by producing leases because that would reflect the dates individuals and entities listed in the Subpoenas were operating at the malls. Ms. Riola responded that she could not agree to that and that the Plaintiffs "needed everything" in the Subpoenas.
>
> 8. Ms. Riola did not state or suggest at any point during the call that she needed to confer with her co-counsel, Mr. Cannella, on any aspect of the Subpoenas, including whether they could be limited. Ms. Riola also did not indicate she had limited authority or involvement in the case or that her refusal to limit the Subpoenas might change in the future.
>
> 9. On May 26, 2016 after the telephone call with Ms. Riola, I sent an email and letter to Ms. Riola and Mr. Cannella confirming the extension. I did not reference Ms. Riola's refusal to limit the scope of the Subpoenas in the email or letter because, as a general matter, I do not send emails and letters confirming disagreements.

(Doc. 55-1, ¶¶ 6-9).

According to Mr. Quimby:

> 3. On the morning of May 26, 2016, I sat in on a phone call which took place over spearkerphone between Brian C. Blair, a partner at Baker & Hostetler, LLP who also represents Simon in this matter, and Plaintiffs' counsel, Jill Riola. Ms. Riola, Mr. Blair and I were the only individuals on the telephone call.
>
> 4. On the telephone call, Mr. Blair asked Ms. Riola whether she would agree to extend the deadline for Simon to respond to the Subpoenas. Ms. Riola agreed.

>5. On the same telephone call, Mr. Blair asked Ms. Riola what the Plaintiffs were looking for since the Subpoenas were very broad. Ms. Riola stated in response that they were looking for the time periods when the individuals and entities listed in the Subpoenas may have been operating in the six malls identified in the Subpoenas. Mr. Blair then asked Ms. Riola if it would be possible to limit the scope of the Subpoenas by producing leases because that would reflect the dates individuals and entities listed in the Subpoenas were operating at the malls. Ms. Riola responded that she could not agree to that and that the Plaintiffs "needed everything" in the Subpoenas.
>
>6. Ms. Riola did not state or suggest at any point during the call that she needed to confer with her co-counsel, Mr. Cannella, on any aspect of the Subpoenas, including whether they could be limited. Ms. Riola also did not indicate she had limited authority or involvement in the case or that her refusal to limit the Subpoenas might change in the future.

(Doc. 55-2, ¶¶ 3-6).

According to Ms. Riola:

>3. At 10:32 a.m. on May 26, 2016, Brian Blair, counsel for Simon Property Group, Inc. ("Simon"), phoned me.
>
>4. In a conversation that lasted exactly three (3) minutes and 11 seconds, he advised me that his client had been served with the six (6) subpoenas the day before, on May 25, 2016, and that he had just been retained to represent them.
>
>5. Mr. Blair indicated that the return date on the subpoenas was May 31, 2016, only three (3) business days away, and asked for an extension of time to respond. I immediately agreed he could have an extension until June 21, 2016.
>
>6. I recall that we discussed the general purpose of the subpoenas, that we had served similar subpoenas on other third party mall owners to obtain specific information that we hadn't been able to get from Defendant Basic Sports Apparel, Inc. ("BSA") about BSA's business in the malls. I recall telling him that we had already received information from some of those other third parties we had previously subpoenaed that indicated BSA was only in certain malls for a few months, not

>for the far lengthier periods BSA had implied in its responses to Plaintiffs' Interrogatories.
>
>7. I do not recall any discussion with Mr. Blair regarding the specifics of the Simon subpoenas and do not recall his requesting any limitation of their scope. If he had, I would have advised him to speak with my partner, David E. Cannella, who is responsible for handling the discovery in the underlying litigation, to discuss the specifics of any limitation.
>
>8. At no time during my conversation with Mr. Blair did he state that unless he received a limitation on the scope of the subpoenas to Simon he would bring the Motion.
>
>9. At no time during my conversation with Mr. Blair did he raise or discuss with me the facts and issues raised in the Motion, nor did he raise or discuss with me the facts and issues set forth in the June 21, 2016 Affidavit of Melissa Whybrew. Indeed, he could not have done so, as many of those facts and issues clearly arose *after* our May 26, 2016 telephone conversation.
>
>10. At no time during my conversation with Mr. Blair did he advise me that our conversation was a conferral pursuant to Local Rule 3.01(g) regarding the Motion. As far as I was aware, any conferral between us during our May 26, 2016 call was limited solely to Mr. Blair's request for an enlargement of time, which I had immediately agreed to give him.
>
>11. That same day, Mr. Blair confirmed our conversation twice – once by email and once by letter. In both the email and the letter he thanked me for granting the extension of time. Mr. Blair did not, however, in either the email or the letter, mention any request made or denied for a limitation of the scope of the Simon subpoenas.
>
>12. Mr. Blair did not contact me again after the May 26, 2016 phone call, nor did he contact my partner Mr. Cannella, before he filed the June 21, 2016 Motion.

(Doc. 47-1, ¶¶ 3-12, footnotes omitted).

Local Rule 3.01(g) requires that attorneys make a serious effort to resolve most disputes before a motion is filed. The Rule requires that counsel have an honest, conscientious, civil exchange during which they address the realities of their respective

positions. What constitutes a sufficient Rule 3.01(g) conference depends, in part, on the size and complexity of the matter. If the issue is simple, then a relatively brief conversation may suffice. On the other hand, if the issue is large or complex, more effort will be required before counsel can say that a reasonable, good faith effort was made. In many instances, it may be appropriate to compare the effort required to satisfy Rule 3.01(g) to the effort required to prepare the motion or response. If the matter will require significant, time consuming briefing, then the Court expects counsel to spend more time trying to resolve the dispute than may be necessary on a matter requiring a short motion and short response. What is never acceptable is a perfunctory inquiry or response. Regardless of the size or complexity of the matter, counsel must always have a real, substantive conversation.

Turning to the pending motion, FED. R. CIV. P. 45 authorizes parties to issue subpoenas commanding nonparties to, *inter alia*, produce documents, electronically stored information, or tangible things in the nonparties' possession, custody, or control for inspection, copying, testing, or sampling. FED. R. CIV. P. 45(a)(1)(A)(iii), (a)(1)(D). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). "The Committee's reasoning is evident: local nonparties should be burdened as little as practicable by litigation in which they are not involved …." Woods ex rel. U.S. v. SouthernCare, Inc., 303 F.R.D. 405, 407-08 (N.D. Ala. 2014). The attorney for Plaintiffs who is responsible for preparing and issuing the subpoenas to Simon did not comply with Rule 45. If he had, and thoughtful, focused subpoenas had been issued, then this dispute might not have occurred.

Simon estimates that compliance with the subpoenas, as issued, would have required it to expend potentially thousands of hours of administrative time and hundreds of thousands of dollars. In this circumstance, a 3 minute 11 second conversation was not sufficient to satisfy Rule 3.01(g). Regardless of which attorneys' recollection of the May 26, 2016 telephone conversation is most accurate, Mr. Blair did not make the necessary effort. He did not explain the impact of the subpoenas on his client, nor did he forcefully advocate for a reduction in the scope of the subpoenas. Ms. Riola also failed in her responsibilities. Her statement that her clients "needed everything," indicates a lack of thoughtfulness, or conscious understanding of the breadth of the subpoenas her law firm had served on Simon.

Now, after due consideration of the foregoing, the motion to quash is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on October 27, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record