UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SPIRAL DIRECT, INC. and SPIRAL
DIRECT, LTD.,

                Plaintiffs,

v.                                           Case No:  6:15-cv-641-Orl-28TBS

BASIC SPORTS APPAREL, INC.,

                Defendant.

_____

## ORDER

Plaintiffs Spiral Direct, Inc. (Spiral US) and Spiral Direct, Ltd. (Spiral UK) (collectively Spiral Direct) and Defendant Basic Sports Apparel, Inc. (Basic) assert claims and counterclaims against one another alleging trademark infringement of the "Spiral" clothing brand.  Spiral Direct moves for partial summary judgment, contending that Basic is judicially estopped from claiming money damages and injunctive relief.  (Doc. 49).  Because Basic failed to disclose its potential trademark infringement claim against Spiral Direct during the pendency of Basic's Chapter 11 bankruptcy proceeding, Spiral Direct's motion has merit and must be granted as to Basic's claim for monetary damages.  But the motion must be denied as to Basic's claim for injunctive relief.

I.      Background

Spiral US, a Florida corporation, and Spiral UK, a British LLC, are related companies with overlapping management that sell "gothic" style clothing under the name "Spiral." (Ghayur Decl., Doc. 16-1, ¶¶ 2–4).  Basic manufactures and sells clothing, including outdoor garments, under the Spiral name.  Although Basic holds a registered trademark

for the use of the word "Spiral" on clothing, Spiral Direct claims that it began selling Spiral branded clothing before Basic's registration and that it is the rightful owner of the Spiral trademark.  Spiral Direct filed common law trademark infringement claims against Basic on April 22, 2015, and Basic asserted trademark infringement counterclaims on December 8, 2015.

Before this dispute arose, Basic filed a voluntary Chapter 11 reorganization petition on April 21, 2014.  (Doc. 49-1).  As required, Basic attached to the petition a list of its personal property that would make up the bankruptcy estate.  (Id. at 8).[1]  Included among the categories of personal property the debtor must list is "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims."  (Id. at 10).  Under that category, Basic listed five claims, none of which were against Spiral Direct.  (Id.).  The listed claims included both pending cases and potential but unfiled claims.[2]  (Id.).  One of the listed claims was a pending trademark infringement case regarding the Spiral trademark against Grupo Espiral, LLC (Espiral).

On September 29, 2014, while Basic's bankruptcy was pending, Espiral took the deposition of Hilel Chowaiki, Basic's president. (H. Chowaiki[3] Aff., Doc. 59-5, ¶ 5).  During that deposition, counsel for Espiral showed Hilel exhibits indicating that twenty-two other companies were using the word "spiral" to market apparel or jewelry products.  (Id. ¶ 6).

---

[1] The cited page numbers of exhibits refer to the page numbers in the original document rather than the page numbers assigned by the electronic filing system.

[2] Those claims were "Grupo Arte Capital Corp."; "Recreational Equipment, Inc. Claim for Fraud"; "First Community Financial Claim for Fraud"; "Gerald Rubin Claim for Fraud"; "Grupo Espiral, LLC Claim for Trademark Infringement." (Doc. 49-1, at 10).

[3] The evidence submitted in this case includes depositions and affidavits of Hilel Chowaiki and David Chowaiki. This Order refers to Hilel and David by their first name when discussing them in the text and uses their first initial and last name when citing their depositions and affidavits.

Spiral US and Spiral UK were included among those companies. (Id.). Hilel acknowledged that Spiral US was infringing Basic's trademark, (2014 H. Chowaiki Dep., Docs. 59-6 & 59-7, at 79), and that if Spiral UK sold its products in the United States, it too would be infringing the trademark, (id. at 50). One week before the deposition, Hilel learned that Spiral UK was using the Spiral trademark. (Id. at 50, 80; 2016 H. Chowaiki Dep., Doc. 49-2, at 97).

On October 3 and 20, 2014, Basic filed two amended personal property disclosure forms with the bankruptcy court. (Doc. 49-3, at 4; Doc. 49-4, at 4). The amended forms slightly altered the original language regarding Basic's previously disclosed claims[4] but did not disclose any additional claims. Basic filed its first amended plan of reorganization and an amended disclosure statement (Docs. 49-5, 49-6) on November 18, 2014, and its second amended disclosure statement (Doc. 49-7) on December 18, 2014. In the second amended disclosure statement, Basic stated that it would pay to its creditors "50% of the recovery . . . from the trademark infringement suit [Basic] ha[d] pending . . . against [Espiral]." (Doc. 49-7 at 27). But the disclosure did not include any potential recovery against Spiral Direct. On December 5, 2014, Basic filed its second amended plan of reorganization. (See Doc. 117 in Case No. 14-30661-HCM-11 (Bankr. W.D. Tex., Dec. 5, 2014)).

On January 22, 2015, during the pendency of Basic's bankruptcy proceedings, Corey W. Haugland—Basic's counsel in both its bankruptcy and trademark litigation

---

[4] Included among the subtle changes was a modification of "Gerald Rubin Claim for Fraud" to "Possible claim against Gerald Rubin." (Doc. 49-3, at 4).

against Espiral (Doc. 49-7 at 38; Doc. 49-1 at 3)—sent a cease and desist letter addressed

to Spiral US.  (Doc. 16-3).  That letter stated in relevant part:

> It has come to my client's attention that your business, Spiral Direct, Inc. has been using [Basic]'s trademark or a very similar mark ("Spiral") in association with the marketing, sale, distribution and identification of its products and/or services (the "Infringing Trademark").
>
> . . .
>
> Your actions constitute trademark infringement and unfair competition under both state and federal law, including the Lanham Act (15 U.S.C. § § 1051-1127). Remedies for such infringement can include payment of actual and treble damages, recovery of profits, reimbursement of attorney's fees and may also include an injunction against your further use of the Infringing Trademark and the seizure of infringing materials.
>
> My client respectfully requests that you immediately discontinue any and all use of the Infringing Trademark with the marketing, sale, distribution, or identification of products or services.  Please respond to me in writing within seven (7) calendar days indicating that you will cease and desist from any and all further use of [Basic's] trademark, the Infringing Trademark, or any confusingly similar trademark.
>
> My client hopes that these issues can be resolved civilly and without litigation. However, be advised that my client has instructed me to file suit unless you respond promptly and appropriately to this demand. This matter is worthy of your immediate attention.

(Id. at 1–2).  Basic sent virtually identical letters to four other companies and commenced

three petitions to cancel other trademark registrations.  (D. Chowaiki Aff., Doc. 59-3, ¶ 6).

Basic sent these letters after learning during the Espiral litigation that a lack of "policing" its

brand could result in a loss of rights to its Spiral trademark.  (Id.).

On February 13, 2015, Basic filed its *corrected* and *modified* second amended plan

of reorganization.  (See Doc. 163 in Case No. 14-30661-HCM-11).  On February 17, 2015,

the bankruptcy court confirmed Basic's bankruptcy plan.  (See Doc. 165 in Case No. 14-

30661-HCM-11).  On April 22, 2015, Spiral Direct filed the instant lawsuit against Basic

4

seeking a declaratory judgment of non-infringement.[5]  (Compl., Doc. 1).  The bankruptcy court ordered that the bankruptcy case be closed on May 15, 2015.  (See Doc. 177 in Case No. 14-30661-HCM-11).  And on December 8, 2015, Basic filed its Answer, Affirmative Defenses, and Counterclaims for trademark infringement against Spiral Direct—two under 15 U.S.C. §§ 1117 & 1125(a) and two under Florida's unfair competition law.  (Answer, Doc. 39).  Basic seeks treble monetary damages, Spiral Direct's profits, and a permanent injunction preventing Spiral Direct from using the Spiral trademark.  (Answer at 16–17).

II.     **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  But when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish

---

[5] Spiral Direct also alleges (1) that Basic's trademark infringement claims are barred by laches; (2) that Basic's trademark is invalid due to abandonment and fraud; and (3) common law trademark infringement claims under state and federal law.  (Am. Compl., Doc. 16).

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III.   Analysis

Spiral Direct contends that because Basic failed to disclose its claims against Spiral Direct in its Chapter 11 reorganization proceeding, those claims are barred by judicial estoppel.  Basic argues, however, that did not have sufficient knowledge of its potential claims against Spiral Direct and thus it did not have a duty to add them as an asset in its bankruptcy disclosures.  Alternatively, Basic argues that even if the Court is inclined to apply judicial estoppel to its monetary claims for damages, the doctrine should not apply to its claim for injunctive relief.

### A.   Claims for Monetary Relief

Judicial estoppel is an equitable doctrine invoked at the court's discretion. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001)).  The doctrine prohibits a party from "'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" Id. (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 134.30, at 134-62 (3d ed. 2000)).  It is "'intended to prevent the perversion of the judicial process,'" id. (quoting Moore's Federal Practice § 134.30, at 134-62), "'by prohibiting parties from deliberately changing positions according to the exigencies of the moment,'" id. (quoting New Hampshire, 532 U.S. at 750).  There are no hard and fast rules when applying judicial estoppel; rather, the doctrine's application is flexible based on the totality of the circumstances. Id. at 1285–86.

Although the doctrine is flexible, the Eleventh Circuit primarily considers two factors in its judicial estoppel analysis. First, the inconsistent position must have been made under

oath in a prior proceeding, and second, it must be shown to have been calculated to make a mockery of the judicial system. Id. at 1285. The second prong requires that the inconsistency be intentional rather than inadvertent, and that requisite intent can be inferred from the record. Id. at 1286–87. And because the doctrine protects the integrity of the judicial system rather than the litigants, privity or detrimental reliance need not be shown. Id. at 1286.

As to the first prong, it is undisputed that Basic's position in its bankruptcy disclosures that it had no claims against Spiral Direct is a position made under oath in a prior proceeding that is inconsistent with the position it now takes. The remaining question is whether Basic intentionally failed to disclose its potential cause of action against Spiral Direct.

"A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court." Ajaka v. Brooksamerica Mortg. Corp., 453 F.3d 1339, 1344 (11th Cir. 2006) (citations omitted). In a Chapter 11 reorganization context, this includes an initial disclosure of "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), and post-petition disclosures of

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).[6] Required bankruptcy disclosures generally include all known potential lawsuits that are likely to arise in a non-bankruptcy setting. In re Coastal Plains, Inc., 179 F.3d 197, 207–08 (5th Cir. 1999). This requirement is not dependent on the debtor's knowledge of "'all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed.'" Id. at 208 (quoting Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n, 932 F. Supp. 859, 867 (E.D. Tex. 1996)); see In re Envirodyne Indus., Inc., 183 B.R. 812, 821 n. 17 (Bankr. N.D. Ill. 1995). "'Any claim with potential must be disclosed, even if it is contingent, dependent, or conditional.'" In re Coastal Plains, Inc., 179 F.3d at 208 (emphasis and internal quotation marks omitted) (quoting Youngblood Grp., 932 F. Supp. at 867). "[I]n determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." 11 U.S.C. § 1125(a)(1). "The failure to comply with the Bankruptcy Code's disclosure duty is

---

[6] Basic's lengthy discussion about the varying requirements for disclosures under Chapters 7, 11, and 13 bankruptcies points to a distinction without a difference. Although different statutes apply to Chapters 7, 11, and 13 post-petition disclosures, Basic makes no attempt to describe the duty to disclose under Chapter 11 as being any different *in practice* than the duties imposed under Chapter 7 and 13. The Eleventh Circuit has held that the ongoing duty to disclose potential lawsuits applies to all types of bankruptcies. See De Leon v. Comcar Indus., Inc., 321 F.3d 1289, 1291 (11th Cir. 2003) ("We also conclude that any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies."); see also Ryan Operations G.P. v. Stantiam-Midwest Lumber Co., 81 F.3d 355, 361–65 (3d Cir. 1996) (applying judicial estoppel analysis to an entity's undisclosed claims in a voluntary Chapter 11 reorganization). Basic's argument is also belied by the fact that it included several potential lawsuits in its disclosures.

'inadvertent' only when" (1) "a party either lacks knowledge of the undisclosed claim or" (2) "has no motive for their concealment." Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1295 (11th Cir. 2003).

It is clear that Basic learned of its causes of action for trademark infringement during the pendency of its Chapter 11 proceedings. Nearly five months before the bankruptcy court confirmed Basic's reorganization plan, Hilel, through the Internet, discovered that Spiral UK was infringing Basic's trademark by marketing clothing using the name "Spiral." One week later, while being deposed by Espiral, Hilel learned that Spiral US was also marketing clothing under the name "Spiral." Of the twenty-two infringers revealed to Basic during Hilel's deposition, Basic sent cease and desist letters to only five, including Spiral US. In its letter to Spiral US threatening to sue for damages and injunctive relief, Basic wrote that Spiral US was violating Basic's trademark. This chronology of facts shows that Basic knew of its claim against Spiral Direct before the bankruptcy was confirmed. Thus, Basic had an affirmative duty to file an amended disclosure listing its potential claims against Spiral Direct.

Basic's argument that it was unaware whether Spiral UK sold its products in the United States and that it only addressed the cease and desist letter to Spiral US is unpersuasive. During Hilel's 2014 deposition in the Espiral litigation, Hilel became aware that Spiral US and Spiral UK sold the same gothic clothing with the same stylized Spiral logo. (2014 H. Chowaiki Dep. at 79–82). Hilel also learned that Spiral UK—not Spiral US—had a registered trademark in the United States for a mark that matched Spiral US's signature logo. (Id.). That Basic did not fully appreciate the relationship between Spiral US and Spiral UK does not excuse its failure to disclose the potential lawsuit. Basic was

aware that the companies were related, that they sold the same goods bearing the same distinctive logo, and that Spiral UK had a trademark registration in the United States for Spiral Direct's logo.  Basic clearly became aware during the pendency of its Chapter 11 reorganization case that it had trademark infringement claims against Spiral US and Spiral UK, and the nondisclosure of that information prevented Basic's creditors from making an informed judgment about Basic's reorganization plan.

Additionally, Basic had a motive to conceal its potential trademark infringement claim.  By not disclosing its potential claim against Spiral Direct in its bankruptcy disclosures, Basic would keep 100% of any damages assessed against Spiral Direct in this litigation.  That is, it would not have to split any of its recovery with its creditors, although Basic was obligated to pay its creditors 50% of any recovery in its claim against Espiral. See Barger, 348 F.3d at 1296 (a motive for concealment is found where a party benefits by "keep[ing] any proceeds for [itself] and not have them become part of the bankruptcy estate.").

Basic's arguments in response fall short.  Basic contends that it "never had an intention to make or pursue claims for damages, nor did [it] know whether any such claim for damages existed." (D. Chowaiki Aff. ¶ 8).  This argument fails on its face given that Basic's attorney claimed in the cease and desist letter that "my client has instructed me to file suit unless you respond promptly and appropriately to this demand," (Doc. 16-3 at 2), and that Spiral Direct's "actions constitute trademark infringement" that could result in "actual and treble damages, recovery of profits . . . [and] an injunction against your further use of the [i]nfringing [t]rademark," (id.).  Despite this language, Basic contends that its cease and desist letter does not show an intent to file a lawsuit against Spiral Direct

because it "never filed a lawsuit against . . . any of the other four companies to whom it sent 'cease and desist' letters." (Basic's Resp., Doc. 59, at 10). This attempt to downplay the cease and desist letter is unpersuasive. Basic points out that lawsuits against the other recipients were not necessary because "[t]wo of those recipients made responses which indicated either compliance with the request to cease and desist, or activity so slight an infringement as to make it unreasonable to pursue it further." (Id. at 6). This statement undermines Basic's argument because it suggests that, if Spiral did not comply with the cease and desist request, it would have filed suit.

Finally, Basic cites Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996), in which the court declined to apply judicial estoppel where a debtor failed to disclose potential lawsuits in its bankruptcy proceeding. The Ryan decision turned on the court's analysis of the debtor's intent. The court stated that "[a]lthough it may generally be reasonable to assume that a debtor who fails to disclose a substantial asset in a bankruptcy proceeding[] gains an advantage, the undisputed facts weigh against such an inference in this case." Id. at 363. The court then reasoned that the debtor's failure to disclose its potential claims as assets was offset by its failure to disclose other claims as liabilities. Id. As a result "the balance of assets and liabilities before the court and creditors when the reorganization plan was approved may have been unaffected by the failure to list the claims as assets." Id. The court concluded that the debtor "derived and intended no appreciable benefit from its nondisclosure." Id.

Basic makes no comparison to Ryan's balance of assets and liabilities but simply argues that like the debtor in Ryan, it did not play "fast and loose" with the courts. But here, there is no evidence that Basic failed to disclose substantial liabilities to offset its

undisclosed assets, and it is undisputed that Basic derives an appreciable benefit from its nondisclosure. Thus, Basic's reliance on Ryan is unavailing.

Basic's knowledge of its claims against Spiral Direct, coupled with its motive for concealment, amply supports an inference that Basic's nondisclosure was intentional. See Barger, 348 F.3d at 1296 ("[K]nowledge of [a claim] and motive to conceal them are sufficient evidence from which to infer . . . intentional manipulation."). Because Basic knew of its claims for monetary relief against Spiral Direct but did not disclose them in its Chapter 11 reorganization proceedings, Basic is judicially estopped from asserting them now.

## B.    Claim for Injunctive Relief

Spiral Direct also contends that Basic should also be judicially estopped from seeking a permanent injunction that prevents Spiral Direct from using the Spiral trademark. But judicial estoppel is treated differently in claims for injunctive relief as opposed to claims for monetary relief because creditors are only "interested in the debtor's property that can add anything of value to the estate." Burnes, 291 F.3d at 1289. Thus, courts will ordinarily not apply judicial estoppel to prevent a debtor from pursuing injunctive relief that does not add monetary value to a bankruptcy estate. See id. ("In this situation, knowledge that the debtor was pursuing a discrimination claim seeking injunctive relief that offered no monetary value to the estate, would not, in all likelihood, have changed the bankruptcy court's determination about how to proceed with the debtor's bankruptcy."). For example, courts have declined to apply judicial estoppel to undisclosed claims seeking reinstatement of employment, see Barger, 348 F.3d at 1297, and to enjoin illegal employment practices, see Burnes, 291 F.3d at 1288; see also Lett v. Reliable Ruskin, No. 1:05-cv-479-WHA, 2006 WL 2056582, at *8–9 (M.D. Ala. July 24, 2006) (finding that a debtor was judicially estopped from asserting its equitable claim to receive a promotion from his employer

because the promotion "would increase [the debtor's] income and add monetary value to his estate," but finding that the debtor could still "seek[] an injunction preventing future discriminatory practices by [his employer]"). Of course, "[t]he facts of a particular case will always guide the court's analysis" of whether judicial estoppel should apply to claims for injunctive relief. Burnes 291 F.3d at 1289 n.3.

Here, there is no dispute that an injunction barring Spiral Direct from using the Spiral trademark would increase the value of the Spiral trademark, which is an asset listed in Basic's bankruptcy disclosures. (See Basic's Resp. at 11 (stating that Spiral Direct's infringement of its mark results "in the devaluation of the mark")). However, Basic persuasively points out that trademark infringement is different in character from employment disputes involving requests for injunctive remedies for a previous discrete harm. Trademark infringement is an ongoing harm, and each time Spiral Direct infringes Basic's trademark, Basic has a new claim for infringement. Thus, the Court agrees with Basic's contention that its claim for injunctive relief, by its nature, is focused on preventing prospective violations of its trademark, which should be treated as "post-bankruptcy" violations rather than an undisclosed claim for pre-bankruptcy violations. Due to the nature of trademark infringement, Basic could have many new causes of action accruing after its bankruptcy and should be allowed to pursue those claims. This is true especially if Spiral Direct ultimately failed on its claims against Basic. If that happened, Basic would own a valid registered trademark for Spiral but—if judicial estoppel were held to apply—would be unable to prevent ongoing and indefinite violations by Spiral Direct. Judicial estoppel is not a tool for preventing parties from pursuing future claims based on new causes of action. Because a permanent injunction for trademark infringement is geared to prevent ongoing

violations, Basic's claim for injunctive relief will not be barred by the doctrine of judicial estoppel.

## IV.     Conclusion

It is **ORDERED** that Spiral Direct, Inc. and Spiral Direct, Ltd.'s Motion for Partial Summary Judgment (Doc. 49) is **GRANTED in part and DENIED in part**. The motion is granted as to Basic Sports Apparel, Inc.'s claims for monetary relief. The motion is denied as to Basic Sports Apparel, Inc.'s claims for injunctive relief.

**DONE** and **ORDERED** in Orlando, Florida, on ~~February~~ March 1, 2017.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties